### Mark W. Mazozon and Harvey Sperry *vs.* Appleton Foot.

If a debtor remove or return into this state publickly, and with a view to dwell and permanently re-side within its jurisdiction, although in an extreme part from the place of his former residence, or that of the creditor, it is a *coming* or *return* within this state, within the meaning of the 10th sec-tion of the statute of limitations, although the creditor should have no knowledge of such return,

So too, if a debtor, having no intention to reside, come or return into the state, and this is known to the creditor, and he has opportunity to arrest the body of such debtor.

But in the latter case, the debtor, to avail himself of the statute, must prove the actual knowledge of his creditor, of such temporary residence.

THIS was a motion for a new trial, founded upon the following

#### CASE STATED.

This was an action of debt, on judgment; plea, the statute of limitations; replication, that the defendant was out of the state; rejoinder, that the defendant came and returned within the state, &c. surrejoinder, traversing the last plea of the defendant.

The judgment declared on, was rendered by the Court of common pleas of the county of Franklin, in the state of New-York, at their May term, A. D. 1811, for $100,90, debt and costs. The present action was commenced Feb. 21st, 1823.

The plaintiffs resided in *Cornwall,* adjoining Middlebury, in this state. It appeared from the testimony of witnesses, on the trial of the cause, that the defendant, with his family, was resident in the state of New-York, prior to the time of render-ing the judgment declared upon, and the evidence given of his coming and return within this state, was, that in the autumn of 1811, or winter of 1811-12, the defendant came from the state of New-York to *Middlebury* in this state, and was openly and publicly here three or four weeks, and then returned to New-, York. Also, that the defendant came again from New-York to Middlebury, in the autumn of 1813, and was openly and pub-licly here with his wife; that from the time he came to the time of his return to New-York, was five or six weeks, during which period he was absent to the Southward, two or three weeks; and that while here, he obtained a drove of horses.

The Court decided, that the facts shown in evidence, did not constitute such coming or return within the state as would en-title the defendant thereby to the benefit of the statute of limi-tations, and so instructed the jury; whereupon a verdict was re-turned for the plaintiffs.

*Chipman,* in support of the motion. The question raised by the pleadings, is, did the defendant come or return into this state, more than eight years before the commencement of the plaintiffs' action, in such manner and under such circumstances, as that the statute of limitations began to run against the plain-tiffs' demand?

The facts appearing in the case, raise a violent presumption, that the plaintiffs knew that the defendant was in *Middlebury.* If the legislature had intended that further proof of the debtor's return should be required, they would have provided directly,

*Addison,*
January,
1826.

Mazozon
*et al.*
*vs.*
Foot.

that the debtor should move into the state, or return with the knowledge of the creditor. No such provision is made, and to make it, would be judicial legislation. A more rational construction has been given to similar statutes in other states. In the case, *Fowler* vs. *Hunt,* 10 *Johns. R.* 464, the court say, "the coming from abroad must not be clandestine and with intent to defraud the creditor, by setting the statute in operation, and then departing. It must be publick, and under such circumstances, as to give the creditor an opportunity, by the use of ordinary diligence and due means, of arresting the debtor."

This is construing the statute, according to the obvious intention of the legislature, and is keeping in view, the reasons on which statutes of limitations are passed. And although it has been said by some eminent jurists, that statutes of limitations are to be viewed as mere positive enactments, prescribing the time within which suits are to be brought; yet, in carrying them into effect, courts of justice have ever found it necessary to keep in view the reasons on which they are passed, to wit, the presumption arising against a demand, from the length of time the creditor has suffered it to sleep. It is presumed, that if a creditor reside in the same state with the debtor, the creditor will not suffer his demand to lie a length of time, but if not paid, will enforce the payment. If the debtor reside in another state, it is presumed, that if he return into the state, the creditor will be vigilant and careful to embrace the opportunity of arresting him before he escape. Hence, such return sets the statute in operation, as though the debtor had a permanent residence in the state.

The case of *White* vs. *Baily,* 3 *Mass. R.* 271, will be cited as an authority to prove, that to put the statute in operation, the debtor must not only remove into the state, but that he must prove that the creditor had knowledge of the fact. But an examination of the case will show, that it proves no such thing; but on the contrary, as far as the opinion of the Court can be ascertained from the report of the case, it supports the opinion of the case *Fowler* vs. *Hunt,* before cited. It is a *per curiam* case. The reporter made out the opinion of the Court, as well as the marginal note. In such case, we expect to find a perfect consistency between them; but we find in this case, not only that they are inconsistent with each other, but that the opinion of the Court is made inconsistent with itself. The Court are made to say, among other things, "but as soon as the creditor could have a beneficial remedy by suit, either by attaching the body or effects of his debtor, then the statute should begin to run;" and in conclusion, they are made to say, "by returning into the state, must here be intended a return, with a design again to dwell within the jurisdiction of the commonwealth, and not to lurk in it as a place of concealment." The Court, instead of deciding simply, that the private return of the defendant, being concealed while in the state, did not bring the case within the statute of limitations, with great propriety gave a construction

*Addison,*
January,
1826.

Mazozon
et al.
*vs.*
Foot.

to the statute of limitations, that it might be known what cases came within it; but in doing so, they state, in conclusion, two extreme cases only, the one where the debtor removes into the state openly, with a design to dwell in it; the other where he privately returns and conceals himself in the state, leaving the intermediate and common case, where the debtor returns openly, without a design to reside in the state, to be brought within the statute or not, as may be thought proper; while the marginal note, which is in the following words, clearly brings the case within the statute. "A debtor's return to this government, from which the statute begins to run, must be such a return as will enable his creditor, using reasonable diligence, to arrest his body as security." Surely then, this case cannot be considered as an authority against us; indeed it has been considered as establishing the construction for which we contend. In *Wilson's Ed. of Bacon,* 4 vol. *p.* 479, the case is cited to establish the following position. "A debtor's return, from which the statute begins to run, must be such a return as will enable the creditor, using due diligence, to arrest him. If the debtor return privately, secrets himself, except on Sundays, and departs again in a short time, it is not such a return, as that the statute will begin to run, as the creditor will be chargeable with no neglect in not arresting him."

Thus far we have examined the case, as within the proviso of the act generally; but another view may be taken of it. Our statute of limitations (and it is believed most of the statutes in the several states are the same) saves all those cases where the debtor is out of the state; consequently, if the debtor and creditor both reside in the state of New-York, and the debtor comes into this state, the creditor may pursue and arrest him here, and he can neither plead the statute of New-York nor of this state. Such also, is the British statute, except that it runs against debtors in Scotland, and all others not beyond seas. Whether these statutes are adapted to the situation of the United States, and whether the case put, does not appear more like a legal evasion of the statute, than a case coming within the proviso, we have no disposition to inquire. But we may advert to the particular state of this case, in order to ascertain what ought to be the legal effect of the evidence proving the defendant's return into this state. The plaintiffs, in May, 1811, recovered the judgment on which this action is brought, in the state of New-York, where the defendant resided, and must have had their attorney there, as well for the collecting the judgment, as for obtaining it; and although both parties continued in their respective places of residence, until the commencement of the suit, in 1823, yet, the plaintiffs suffered their judgment to sleep during the whole of that period, and made no attempt to collect it.

Now, as the question is, whether the evidence of the defendant's return into this state, raises a presumption of the plaintiffs' negligence, their acknowledged *prior* neglect for a number of years, has a bearing on this evidence, and heightens the presumption of the plaintiffs' negligence.

*Addison*,
January,
1826.

Mazozon
*et al.*
*vs.*
Foot.

The conclusion then, seems irresistible, that the evidence brings the case within the statute of limitations, if any evidence can do it, short of that proving directly that the plaintiffs knew the defendant was here, neglected to arrest him, and knowingly suffered him to return.

*Phelps*, contra. The evidence does not show such a return as will entitle the defendant to the benefit of the statute of limitations.

For 1. A return, such as is contemplated by the statute, is returning with a design to dwell within the state.—See *White* vs. *Bailey*, 3 *Mass. R.* 271—3 *N. H. Rep.* 221.

A mere passing through the state, or an occasional visit without any fixed residence for the time being, is not sufficient.

At all events, it must be such a return as will enable the creditor, using due diligence, to arrest his body.—*White* vs. *Bailey, ubi supra*—10 *Johns. R.* 464—*N. H. Rep. ubi supra.*

2. If the debtor does not return to dwell here, there must be some evidence to raise a presumption that the creditor knew of his being in the state. The statute does not run in such cases, unless the creditor has been guilty of negligence. And it is not enough, to show that the creditor might by accident, have known of his debtor's being in the state.

3. The saving of the statute extends as well to foreigners, or those who reside altogether out of the state, as to our own citizens, who may be absent for a time.—3 *Johns. R.* 263—20 *Johns. R.* 33.

The opinion of the Court was pronounced by

SKINNER, Ch. J. In this case, we are called upon to give a construction to that part of the 10th section of the statute of limitations, which excepts from its operation, actions against debtors absent from the state at the time the cause of action accrues, and by which, "after such absent person's coming or return within this state," the same time is limited for bringing the action, as in other cases. The case shows, that at the time the cause of action accrued, the defendant was a resident in the state of New-York, and the plaintiffs in this state; that within eight years from the time the cause of action accrued, the defendant had in two instances come to the town of Middlebury, in this state, and remained there publickly several weeks, and from these facts the Court instructed the jury, that the defendant was not entitled to the benefit of the statute.

It cannot be supposed, nor does the defendant insist, that every coming or return into the state, would set the statute in operation. He admits it must be such, as that by due diligence, the creditor might cause an arrest.

If the debtor should remove or return into the state publickly, and with a view to dwell and permanently reside within its jurisdiction, although in an extreme part from the place of his former residence, or that of the creditor, this would undoubtedly bring the case, by a correct construction of the statute, within

Addison,
January,
1826.

Mazozon
et al.
vs.
Foot.

its operation, though the creditor should have no knowledge of his return.   So too if the debtor, having no intention to reside here, comes or returns into the state, and this is known to the creditor, and he has opportunity to arrest the body, the case is brought within the statute.   In the latter case, it is necessary the creditor should be apprised of his debtor's being within the jurisdiction of this state; and the only question in the case before us is, were the jury at liberty to presume such knowledge in the plaintiff from the facts produced on trial?  We believe no such legal inference would arise.   It would be dangerous to adopt it as a rule, that the residence of the creditor in an adjoining town to that in which his debtor may have been for a short period, would raise a presumption that the creditor knew the fact, and it would be difficult to say what facts should afford such presumption.   Within what distance of the creditor's residence the debtor shall come, how long he shall remain, and how publicly he shall sojourn, cannot be settled by any general rule.   We therefore believe the only safe and practicable rule is, to require proof of actual knowledge, where the residence is only temporary.

Motion denied, and judgment on the verdict.

*Dorastus Wooster* and *S. S. Phelps*, for the plaintiffs.

*Daniel Chipman* and *Geo. Chipman*, for the defendant.